CELIA ZAHRINGER v. GEORGE J. ZAHRINGER III
(AC 31056)

Flynn, C. J., and Beach and West, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 15—officially released November 2, 2010

*Wesley W. Horton*, with whom was *Daniel J. Krisch*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

BEACH, J. The defendant, George J. Zahringer III, appeals from the judgment of the trial court modifying the unallocated alimony and child support awarded to the plaintiff, Celia Zahringer, at the time of the dissolution of the marriage of the parties. The defendant claims that the court erred by (1) finding that payments from the plaintiff's father, Eugene Goldberg, were loans, (2) not taking these payments into account, regardless of whether or not they were loans, in fashioning its order for unallocated alimony and child support, (3) incorporating the defendant's capital accumulation plan (CAP) distribution into the determination of the plaintiff's alimony award, and (4) employing the dates of the 1999 hearing on the plaintiff's motion for modification of alimony and child support and the parties' gross income in fashioning its financial orders.[1] We agree that the court erred in employing the dates of the 1999 hearing and accordingly reverse the judgment of the trial court.

This appeal follows a retrial after our Supreme Court reversed the decision of this court affirming the original decision of the trial court and remanded the case for a new hearing on the plaintiff's motion for modification. See *Zahringer* v. *Zahringer*, 262 Conn. 360, 815 A.2d 75 (2003). The record reflects the following factual and procedural history that is relevant to this appeal.

"The parties' marriage of almost fourteen years was dissolved on August 28, 1995. Prior to the dissolution, three children were born of the marriage. The judgment of dissolution incorporated by reference the terms of a separation agreement (agreement), also signed and dated August 28, 1995. Article III, paragraph 3.3 of the

---

[1] The defendant also claims that the court abused its discretion in increasing the plaintiff's alimony from $25,000 per month to $50,000 per month and in finding an arrearage of more than $3 million. Because we reverse the decision of the trial court on other grounds, we need not decide this claim.

agreement provides in relevant part that [c]ommencing January 15, 1996 for the month of January 1996, the [defendant] shall pay to the [plaintiff] the sum of $25,000 per month as unallocated alimony and child support, said order shall be non-modifiable as to amount through December 1998. Article III, paragraph 3.5 further provides in relevant part that either party may petition the Court for a review of the monthly unallocated alimony and support payment at any time after January 1, 1999. The Court shall at that time consider the totality of the financial circumstances of the parties and by application of the criteria set forth in Connecticut General Statutes Section 46b-82 determine whether the then existing unallocated alimony and support award should continue unmodified, should be increased, or should be reduced. Any modification shall be made retroactive to January 1, 1999.

"On April 8, 1999, the plaintiff filed a motion for modification of the existing unallocated alimony and support award. In her motion, the plaintiff represented that the defendant currently had a substantially greater disposable income than he did at the time of the judgment dissolving the marriage. The plaintiff also asserted in the motion that the cost of the children's various activities had increased substantially given their change in age since the time of the judgment. A hearing on the plaintiff's motion took place on December 8, 9 and 10, 1999. . . .

"Thereafter, the [trial] court rendered a decision on the plaintiff's motion for modification." (Citation omitted; internal quotation marks omitted.) *Zahringer* v. *Zahringer*, supra, 262 Conn. 362–63. "[T]he court ordered the defendant to pay the sum of $50,000 monthly to the plaintiff as unallocated alimony and child support, effective as of January 1, 1999, pursuant to paragraph 3.5 of the parties' . . . agreement. Because the new order was to be retroactive and, as a result,

created an arrearage, the court ordered that the arrearage be paid in monthly installments of $37,500 until paid in full, commencing April 15, 2000." (Internal quotation marks omitted.) Id., 364.

On appeal to this court, the defendant claimed that the trial court improperly had failed to consider the contributions made to the plaintiff by her parents in its alimony award. Id. This court determined that the record was inadequate to review that claim. Id., 361. The defendant then appealed to our Supreme Court, claiming that the record was adequate to review his claim. Id. The Supreme Court agreed and reversed the decision of this court. Id., 362. Our Supreme Court remanded the case to us with direction to reverse the judgment of the trial court and to remand the case for a new hearing on the motion for modification. Id., 371. The Supreme Court provided the following direction to the trial court: "The issue of whether *any* loan, regardless of whether it is the result of an arm's-length transaction and irrespective of its terms, properly may be considered by the trial court in fashioning financial orders is not yet ripe for our consideration in this case because the trial court made no finding in this regard. Following our remand, should the trial court determine that the fund was not a gift, the trial court may make the necessary findings in connection with that issue. We further note that on remand the trial court will have before it the issue of whether paragraph 3.5 of the . . . agreement approved by the court requires it to consider the funds, regardless of how they are characterized." (Emphasis in original.) Id., 369–70 n.2.

Following the remand by our Supreme Court, the defendant filed a motion for modification in September, 2003. A hearing was conducted on the plaintiff's 1999 motion for modification and the defendant's 2003 motion for modification on various days in 2007 and 2008. On December 3, 2008, the trial court filed its

memorandum of decision on both motions. On the plaintiff's 1999 motion for modification, the court increased the unallocated alimony and support order from $25,000 to $50,000 per month retroactive to January 1, 1999. On the defendant's 2003 motion for modification, the court granted the motion to reduce payments to $43,750 per month effective October 15, 2003, as a result of the three children of the marriage having reached the age of majority. Additional facts will be set forth as necessary.[2]

We begin by setting forth the well settled standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 330–31, 983 A.2d 293 (2009).

I

The defendant first claims that the court erred when it determined that the payments from the plaintiff's father to her were loans and not gifts. We disagree.

[2] The children reached the age of majority on December 5, 2001, November 8, 2003, and October 6, 2005, respectively.

The following additional facts, found by the trial court, are necessary to our resolution of the defendant's claim. In January, 1998, the plaintiff received $110,000 from her father. In January, 1999, the plaintiff received $120,000 from her father. These two payments were placed in a joint checking account on which the plaintiff was authorized to draw checks. Each payment was accompanied by a note signed by the plaintiff indicating that the money deposited for her benefit was a loan from her father. From February, 2000, through some time in 2008, the plaintiff received additional funds from her father, and she signed corresponding notes. The total value of the notes exceeded $2 million. These additional funds were not placed into the joint account but, rather, were wired to the plaintiff by her father when she informed him that she needed additional funds to supplement her income from alimony. On June 1, 2005, the plaintiff executed a mortgage deed in favor of her father for $650,000. This mortgage was then modified on February 2, 2006. The indebtedness recited in the mortgage was increased to $1,330,000. The plaintiff has never paid any of the principal on the loans but has paid some interest "[f]rom time to time."

The court relied on the testimony of the plaintiff and her father. The plaintiff testified that she had begun borrowing money from her father because her alimony "funds that [she] had to maintain the life for [herself] and [her] children in a manner that [they] had lived prior to [the parties'] divorce were insufficient." She further testified that if her motion for modification were granted, she could then repay her father. If her motion for modification were not granted, then she had planned possibly to sell her house in order to repay him.

The plaintiff's father also testified as to his understanding of the agreement between himself and the plaintiff regarding the funds he provided to her, which testimony the court found credible. He stated that he

had loaned the plaintiff the money with the intention that she would repay him. Her father testified that he did not give the plaintiff any money because it was not his place to give her money. He declared that he required the plaintiff to sign a second mortgage on her home in his favor because "I want to get my money back. I'll do anything I can to get it back. I don't want it to go in any other direction . . . other than to me, when I'm entitled to it." He also stated, "I do not look upon myself as a source of income for my daughter." He explained that the debt reflected in the mortgage was less than the total amount of the outstanding notes because he wanted to keep the mortgage to an amount that realistically could be collected. His accountant, Stuart Kotler, also testified and confirmed that he had had discussions with the plaintiff's father regarding the loans to the plaintiff and the tax implications arising therefrom. The court subsequently found that the plaintiff's father had "presented credible evidence of bona fide loans."

The defendant argues that the payments were a series of gifts "notwithstanding the thin veneer of a loan [the plaintiff] and her father have attempted to put on those payments." "As an appellate court, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . The goal of our analysis is simply to decide whether the trial court's conclusion was reasonable." (Citation omitted; internal quotation marks omitted.) *Palazzo* v. *Palazzo*, 9 Conn. App. 486, 488, 519 A.2d 1230 (1987).

The court specifically commented on its credibility determinations in its memorandum of decision. The court concluded, on the basis of the demeanor, attitude and credibility of the plaintiff's father, that the funds provided to her were not gifts but were loans that must be paid back. "*It is the sole province of the trial court to weigh and interpret the evidence before it and to*

*pass on the credibility of the witnesses. . . .* It has the advantage of viewing and assessing the demeanor, attitude and credibility of the witnesses and is therefore better equipped than we to assess the circumstances surrounding the dissolution action." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 497, 945 A.2d 1043, cert. denied, 289 Conn. 948, 960 A.2d 1037 (2008). In light of the court's findings of credibility regarding the intent of the plaintiff and her father as to the loans, we cannot conclude that the court's findings were clearly erroneous.[3]

## II

The defendant next claims that the court improperly failed to take into account the plaintiff's loans from her father in fashioning the alimony award. Specifically, the defendant claims that the court should have considered the loans from the plaintiff's father as income to her, even if they technically were determined to be loans, because they were not handled on an arm's length basis and they affected the totality of the plaintiff's financial circumstances. Because the defendant did not provide an adequate record, we decline to review this claim.

As discussed previously, in our Supreme Court's decision remanding the case to the trial court, it ordered that the trial court determine whether the funds provided by the plaintiff's father to the plaintiff were gifts or loans. It then directed that "should the trial court determine that the fund was not a gift, the trial court may make the necessary findings in connection with that issue. We further note that on remand the trial court will have before it the issue of whether paragraph 3.5 of the . . . agreement approved by the court requires it to consider

---

[3] We have not overlooked the arguments of the defendant suggesting that the finding of a series of loans is implausible. We conclude, however, that the arguments do not overcome the specific credibility assessments.

the funds, regardless of how they are characterized." *Zahringer* v. *Zahringer,* supra, 262 Conn. 369–70 n.2. On remand, the trial court did not determine specifically and expressly whether the loans should be considered income because they were not handled on an arm's length basis, nor did it consider specifically and expressly whether paragraph 3.5 of the agreement required it to consider the loans as part of the totality of the financial circumstances of the parties.[4]

"It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record [when] the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter.*" (Emphasis added; internal quotation marks omitted.) *Mickey* v. *Mickey,* 292 Conn. 597, 609, 974 A.2d 641 (2009). The defendant failed to meet this burden, and, accordingly, we decline to review this claim.

## III

The defendant further claims that the court erred in taking his 2007 CAP[5] distribution of $1.2 million into

[4] The court did state in its decision that "[t]he totality of the financial circumstances must include a determination of whether the sums advanced by . . . Goldberg to his daughter constitute gifts or loans, section 3.5 [of the agreement] cannot be read with any other meaning." This statement, however, does not indicate whether and to what extent such sums advanced to the plaintiff affected her financial circumstances.

[5] The defendant testified to the following information to explain the CAP plan: "[I]t's a deferred compensation plan, and the purpose of the plan was to link the performance of Bear Stearns and the compensation of the employees at Bear Stearns [who] participated in the plan, which were senior managing directors, with the performance of Bear Stearns stock. [Bear Stearns was] then a public company. So, the plan was constructed in such a way that the amounts that were deferred either grew or declined. Their performance was linked to the performance of the public security of Bear Stearns, which trades on the New York Stock Exchange. . . .

"On a monthly basis . . . a certain amount of my income was deferred into the plan. At the end of the year, those moneys were translated into an

account in determining the plaintiff's alimony award. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. The agreement, signed by the plaintiff and the defendant, contained the following language in paragraph 3.3 regarding alimony and support, which provides in relevant part: "[C]ommencing July 15, 1996, the [plaintiff] shall be entitled to one-third (1/3) of all amounts contributed by [the defendant] to the Bear Stearns Capital Accumulation Plan between the period July 1, 1996 and June 30, 1999. The [plaintiff's] entitlement shall be limited to one-third (1/3) of the gross amounts contributed to the said Plan during the dates stated herein, together with all incremental increases (and subject to all incremental decreases) occasioned by the change in the value of [the defendant's] units in the Plan. The [plaintiff's] share of the Plan shall not be deductible by him or taxable to her until distributions are received by the [defendant]. The [defendant] shall immediately pay to the [plaintiff] as deductible alimony one-third (1/3) of all distributions received by him on account of his participation in the Plan for the period July 1, 1996 through June 30, 1999, even if the [plaintiff] shall have remarried, cohabited or died after June 30, 1999; but before the [defendant] goes into pay status for the CAP plan contributions made between July 1, 1996 and June 30, 1999. The [plaintiff] waives her right to participation in the CAP plan for any years other than these expressly provided to her in paragraph 3.3."

Paragraph 3.5 of the agreement provides: "If alimony has not previously terminated . . . either party may

equivalent number of shares of Bear Stearns stock. So, if I, for the court's benefit, deferred . . . $1000 and Bear Stearns was selling for $100 a share, I would have gotten 10 CAP units at that point in time. . . .

"There was a five year vesting period. So, amounts that were deferred in 1995 were automatically distributed in the year 2000. . . . In 2000 . . . [i]t became mandatory participation by senior managing directors."

petition the Court for a review of the monthly unallocated alimony and support payment at any time after January 1, 1999. The Court shall at that time consider the totality of the financial circumstances of the parties and by application of the criteria set forth in Connecticut General Statute[s] Section 46b-82 determine whether the then existing unallocated alimony and support award should continue unmodified, should be increased, or should be reduced. Any modification shall be made retroactive to January 1, 1999."

"[I]t is familiar law that a marital dissolution agreement is a contract. . . . Thus, in reviewing it, we are guided by the law that the interpretation of a contract may either be a question of law or fact, depending on whether the language of the contract is clear and unambiguous. . . . When the language of the agreement is clear and unambiguous, its meaning is a question of law subject to plenary review." (Internal quotation marks omitted.) *Sutherland* v. *Sutherland*, 107 Conn. App. 1, 5, 944 A.2d 395 (2008). Moreover, such a contract "must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Id., 5–6. We conclude that the language of the agreement is clear and unambiguous.

We find unpersuasive the defendant's argument that the court improperly determined that paragraph 3.3 of the agreement precluded the court from considering

any CAP distributions as part of the defendant's income. The defendant contends that the agreement was crafted to exclude any CAP distributions from consideration as part of his income when modifying his alimony and support obligation. The defendant bases this interpretation on the language that states that the plaintiff " 'shall be entitled to one-third' " of the CAP distributions from 1996 to 1999 and the last sentence in that section that states that the plaintiff " 'waives her right to participation in the CAP plan for any years other than these expressly provided to her in paragraph 3.3.' " The defendant argues that by considering CAP distributions as part of his income, the court applied an improper definition of " 'participation'," which permitted the plaintiff to continue to participate in the CAP after the 1999 agreed on limit. We agree with the court that although the plaintiff had waived further *direct* participation in the CAP after 1999, in the form of receiving a defined percentage of the distributions from it regardless of other circumstances, including remarriage, she did not expressly waive her ability to have any distributions made to the defendant deemed to be part of his income.

It is axiomatic that "[w]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 232, 951 A.2d 1249 (2008). When paragraph 3.3 is read in conjunction with paragraph 3.5, instructing the court to consider the totality of the financial circumstances of the parties, the agreement allows consideration of any CAP distributions as part of the defendant's income for purposes of modification.

IV

The defendant next claims that the court improperly fashioned its award of alimony by (1) using his income

as of December, 1999, to determine whether alimony should increase, decrease or remain the same and (2) by comparing his gross income rather than his net income. We agree that the court erred in using the defendant's income in December, 1999, to fashion its alimony award.

A

The defendant claims that the court erred when it compared his income in December, 1999, with his income in 1995. The agreement states that after January 1, 1999, either party may petition for a review of the alimony and "[t]he court shall *at that time* consider the totality of the financial circumstances of the parties . . . ." (Emphasis added.) The court determined that the proper process for determining whether alimony should increase, decrease or remain the same was to compare the defendant's income in December, 1999, with his income at the time of dissolution in August, 1995.

"When a modification of alimony is requested on the basis of the separation agreement, the court must look to the agreement. Separation agreements incorporated by reference into dissolution judgments are to be interpreted consistently with accepted principles governing contracts." (Internal quotation marks omitted.) *Cushman* v. *Cushman*, 93 Conn. App. 186, 191, 888 A.2d 156 (2006). The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). "[T]he construction of a written contract is a question of law requiring plenary review." *Flaherty* v. *Flaherty*, 120 Conn. App. 266, 269, 990 A.2d 1274 (2010). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the

situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO,* supra, 288 Conn. 231.

"When the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Barnard* v. *Barnard,* 214 Conn. 99, 110, 570 A.2d 690 (1990). "A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. . . . Ambiguous can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one." (Internal quotation marks omitted.) *Reichenbach* v. *Kraska Enterprises, LLC,* 105 Conn. App. 461, 476, 938 A.2d 1238 (2008). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff,* 91 Conn. App. 374, 381, 880 A.2d 977 (2005). "[A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *Detels* v. *Detels,* 79 Conn. App. 467, 472, 830 A.2d 381 (2003). In giving effect to all of the language of a contract, "the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Honulik* v. *Greenwich,* 293 Conn. 698, 711, 980 A.2d 880 (2009).

Paragraph 3.5 of the agreement states: "If alimony has not previously terminated by the occurrence of an event described in the preceding paragraph, then in such event either party may petition the Court for a review of the monthly unallocated alimony and support payment at any time after January 1, 1999. The Court shall at that time consider the totality of the financial circumstances of the parties and by application of the criteria set forth in Connecticut General Statute[s] Section 46b-82 determine whether the then existing unallocated alimony and support award should continue unmodified, should be increased, or should be reduced. Any modification shall be made retroactive to January 1, 1999."

We conclude that the agreement is ambiguous because it is susceptible to more than one interpretation. The defendant argues that the court should have interpreted this provision of the agreement such that the court should consider the financial circumstances of the parties as of either the date of filing the motion for modification or the dates that the second hearing was held. The court interpreted this provision such that it should determine the financial circumstances of the parties at the time of the first hearing on the motion to modify, conducted by Judge Harrigan and subsequently overturned by our Supreme Court. We agree with the defendant that the court improperly determined both the current and the retroactive alimony by reference to the date of the first hearing.

When construing a contract, we may consider circumstances surrounding the transaction. See *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997). The parties seem to have constructed this provision of their agreement to provide for a second look at alimony to be performed after January 1, 1999. The parties eliminated the need for the court to determine whether a significant change in circumstances

had occurred that would warrant a change in alimony; the percentage participation in CAP contributions and increments would have expired. The phrase "at that time" must then apply to the time when the court must determine whether to increase, to decrease or to maintain the plaintiff's current alimony award. The court determines whether to adjust the defendant's alimony payments at the hearing on the motion for modification. Therefore, the logical meaning of the phrase "at that time" refers to the date of the actual hearing on the motion.

This interpretation of the parties' agreement is also consistent with our case law. We have held that "the financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 846, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005); see also *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 709, 533 A.2d 1226 (1987). The parties drafted other sections of the agreement such that they clearly deviate from current case law, such as providing that any modification to the award would be retroactive to January 1, 1999. The parties did not explicitly indicate that they wanted to bind themselves to a deviation from our case law on the issue of the relevant dates to use in defining income. We therefore are left to conclude that they did not intend to bind themselves to a rule requiring a different date of determination that would deviate from our case law. Accordingly, we conclude that the proper date for determining income, for the purpose of deciding whether the plaintiff's current alimony award should be increased, decreased or remain the same, is the date of hearing on the motion to modify following the remand from our Supreme Court.

Consistent with our case law, the trial court has discretion in determining the amount of alimony to be paid

retroactive to January 1, 1999. See *Hartney* v. *Hartney*, 83 Conn. App. 553, 559, 850 A.2d 1098 ("[t]rial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes"), cert. denied, 271 Conn. 920, 859 A.2d 578 (2004). The retroactive award may take into account the long time period between the date of filing a motion to modify, or, with this case, the contractual retroactive date, and the date that motion is heard, which in this case spans a number of years. The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes. The current alimony need not be uniformly retroactive, if such a result would be inequitable.

## B

The defendant's final claim is that the court improperly used his gross income to fashion the alimony award. Because we reverse the decision of the court for using an improper date to fashion the alimony award, we need not decide this claim. We do note, however, that it is well settled that a court must base its alimony award on the available net income of the parties, not their gross income. *Morris* v. *Morris*, 262 Conn. 299, 305–306, 811 A.2d 1283 (2003); see also *Loughlin* v. *Loughlin*, 280 Conn. 632, 659, 910 A.2d 963 (2006); *Cleary* v. *Cleary*, 103 Conn. App. 798, 801, 930 A.2d 811 (2007).

The judgment is reversed and the case is remanded to the trial court for a new hearing on the plaintiff's motion for modification.

In this opinion the other judges concurred.