******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIANNE OLSON *v.* FUSAINI MOHAMMADU
(AC 37216)

Alvord, Mullins and Sullivan, Js.

*Argued September 15—officially released November 8, 2016*

(Appeal from Superior Court, judicial district of Hartford, Hon. Herbert Barall, judge trial referee [dissolution judgment]; Ficeto, J. [motion to modify]; Albis, J. [motion for counsel fees; motion for contempt].)

*John F. Morris*, for the appellant (defendant).

*Brandon B. Fontaine*, with whom, were *Emily C. Carr* and, on the brief, *C. Michael Budlong*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Fusaini Mohammadu, appeals from the ruling of the trial court, *Ficeto, J.*, denying his postjudgment motion for modification of alimony and child support orders, rendered on remand following the decision of our Supreme Court in *Olson* v. *Mohammadu*, 310 Conn. 665, 81 A.3d 215 (2013). Additionally, in his amended appeal, the defendant challenges a subsequent ruling of the trial court, *Albis, J.*, that ordered him to pay the plaintiff, Marianne Olson,[1] $6002 in a previously found arrearage pursuant to an order he claimed had been suspended, and the court's ruling that granted the plaintiff's motion for appellate attorney's fees to defend the present appeal. We affirm the judgments of the trial court.

The following relevant facts and procedural history are set forth in the Supreme Court opinion. "The parties were married on June 7, 2001. During the marriage, the parties had one child together. In September, 2008, the plaintiff . . . who resided in Connecticut with [the child], filed a dissolution of marriage action against the defendant, who at that time resided in Florida. On August 5, 2009, the court [*Hon. Herbert Barall*, judge trial referee] rendered judgment dissolving the parties' marriage. In its orders contained in that judgment, the court ordered joint legal custody of the minor child with primary physical custody to the plaintiff and reasonable visitation rights to the defendant in Connecticut. The court further ordered the defendant to pay the plaintiff periodic alimony in the amount of $777 per week. . . .[2] In addition, the court ordered the defendant to pay child support in the following amounts: $334 per week and 66 percent of day care, extracurricular activities and unreimbursed medical and dental expenses for the benefit of the minor child. . . .

"On April 14, 2010, the defendant filed a motion to modify the alimony and child support order. The defendant filed an amended motion to modify on June 18, 2010. As the grounds for his amended motion, the defendant alleged a substantial change in circumstances in that he had relocated from Florida to Connecticut and, consequently, had obtained new employment at a reduced salary. At the modification hearing, the court [*Adelman, J.*] heard undisputed testimony that the defendant voluntarily left employment as a physician in Florida earning a salary of approximately $180,000 annually. The defendant testified that he voluntarily relocated to Connecticut in order to have a more meaningful relationship with his child. As a result of the relocation, the defendant's salary was reduced to approximately $150,000 annually. According to the defendant's testimony, the $150,000 salary is standard pay for someone of his experience in a comparable position in Connecticut.

"After the hearing, the trial court denied the defendant's motion for modification. In denying the motion, the trial court stated in its memorandum of decision that it relie[d] on the voluntary nature of the income change experienced by the defendant. . . . The defendant appealed from the trial court's decision to the Appellate Court." (Citation omitted; footnotes altered; internal quotation marks omitted.) *Olson* v. *Mohammadu*, supra, 310 Conn. 667–69. "While the appeal was pending at the Appellate Court, the defendant filed a motion for articulation of the trial court's decision. . . . The trial court granted, in part, the motion for articulation and stated that [t]he court did not consider the relocation to be a substantial change in circumstance[s] *because the move was a voluntary action* on the part of the defendant." (Emphasis in original; internal quotation marks omitted.) Id., 669.

This court affirmed the judgment of the trial court, concluding that the trial court properly determined that "a change in income resulting from a voluntary decision does not constitute a substantial change in circumstances." *Olson* v. *Mohammadu*, 134 Conn. App. 252, 261, 39 A.3d 744 (2012), rev'd, 310 Conn. 665, 81 A.3d 215 (2013). The defendant filed a petition for certification to appeal from the judgment of this court, which was granted by our Supreme Court. The Supreme Court held that "the Appellate Court improperly concluded that the defendant's voluntary relocation and income change necessarily precluded him from establishing a substantial change in circumstances." *Olson* v. *Mohammadu*, supra, 310 Conn. 670–71. The court reasoned as follows: "[T]he trial court should have taken into account the defendant's motivation for relocating in deciding the threshold issue of whether there was a substantial change of circumstances warranting modification. In other words . . . the trial court should have determined whether the defendant's alleged inability to pay was a result of his own extravagance, neglect, misconduct or other unacceptable reason . . . . Because the trial court made no finding on the culpability of the defendant's conduct, we conclude that the trial court incorrectly applied the law when it denied the defendant's motion for modification." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 680. Accordingly, the Supreme Court remanded the case to this court with direction to reverse the judgment of the trial court and to remand the case to the trial court for a new hearing on the defendant's motion for modification. Id., 686.

The rehearing on the defendant's motion for modification was held before Judge Ficeto on April 21, 2014. Both parties testified as to their financial circumstances beginning at the time of the dissolution judgment in August, 2009, and through the succeeding years up to and including the time of the rehearing in 2014. The

parties each submitted financial affidavits that had been prepared in 2009 and 2014. The parties' tax returns for 2010, 2011 and 2012 also were admitted into evidence. During their closing arguments, counsel referenced proposed orders filed with the court. In those proposed orders, the plaintiff requested that there be no modification of the alimony and child support orders, whereas the defendant requested a modification that would decrease his support obligations. For 2010, the defendant requested the court to reduce his child support obligation from $334 per week to $237 per week, and to reduce the percentage of his payments for uninsured medical expenses and day care expenses from 66 percent to 55 percent. He additionally requested in his proposed orders that his alimony obligation be reduced from $777 per week to $120 per week. For 2011 and subsequent years, the defendant requested his child support obligation to be modified to $307 per week and his alimony obligation to be modified to $400 per week.

The court issued its memorandum of decision on May 14, 2014, and modified its ruling in a memorandum of decision filed August 11, 2014.[3] In its May 14, 2014 memorandum of decision, the court found that the defendant was employed in Florida until March, 2010, that he worked part-time in April and June, 2010,[4] and that he became employed full-time by Community Health Center in New Britain on June 28, 2010, at a salary of $150,000. The court additionally found that he received from his new employer a sign-on bonus of $3000, as well as a payment of $3000 toward his relocation costs. The court found that the defendant worked additional hours at Middlesex Hospital in 2010. In a footnote in its memorandum of decision, the court noted that the defendant was no longer incurring costs for visitation expenses to and from Florida in 2010. Significantly, the court also found that "in the years subsequent to 2010, [the defendant's] income equaled or surpassed $180,000 and therefore there is no substantial change in circumstance in the years 2011, 2012 and 2013. [The defendant] is currently on track to exceed $190,000 in 2014."

In its August 11, 2014 memorandum of decision, the court further found that the defendant's net weekly income in 2009, at the time he was earning $180,000 in Florida, was $2587, as stated in his financial affidavit filed June 4, 2009. As of October 25, 2010, the date of the initial hearing on his motion for modification, the defendant reported his net weekly income to be $1998 on his October 25, 2010 financial affidavit. The court, however, found that the defendant had improperly deducted insurance premiums[5] and contributions to his health care account as " 'above the line' deductions." For that reason, the court determined that his net weekly income, as of October 25, 2010, was $2134.

After concluding that the defendant's net weekly

income was reduced by $454, or 17.5 percent, the court denied the defendant's motion for modification: "When considering a motion for the modification of alimony, the court is permitted to consider the factors set forth in [General Statutes] § 46b-82 namely, the age, health, station, occupation, employability and the amount and sources of income of the parties. . . . The court has carefully considered the facts of this case, the relevant case law and the provisions of [General Statutes §§] 46b-82 and 46b-86 and declines to modify the defendant's support obligations." (Citation omitted; internal quotation marks omitted.)

The defendant appealed from the court's denial of his modification motion on September 29, 2014. Thereafter, on January 19, 2016, Judge Albis heard a number of postjudgment motions filed by both parties. The relevant motions for purposes of this appeal are the plaintiff's motion for contempt and/or for order, and the plaintiff's motion for appellate attorney's fees, both filed on September 10, 2015. In the court's memorandum of decision issued February 10, 2016, Judge Albis determined, inter alia,[6] that the defendant had not wilfully violated the court's April 4, 2013 order to pay the plaintiff an accumulated arrearage of $6002 for his share of child care expenses. Judge Albis found that the order "contained some uncertainty from the outset" and that the defendant had mistakenly believed that payment was suspended until all of his appeals had been decided. After stating that there was no automatic or court-ordered stay with respect to that obligation, Judge Albis ordered the defendant to pay the plaintiff the previously ordered arrearage of $6002 in consecutive monthly installments of $1000 until paid in full.

With respect to the plaintiff's motion for appellate attorney's fees, Judge Albis found that the plaintiff did not have sufficient liquid assets with which to pay her own legal fees. He further found that she did not have sufficient income to pay those fees without using a portion of the child support she received from the defendant, which would undermine the court's prior order of child support. Finally, Judge Albis found that the defendant's income enabled him to pay a portion of the plaintiff's legal fees. Accordingly, the court ordered the defendant to pay the plaintiff $10,000, in monthly installments of $1000, for the defense of the pending appeal. The defendant filed an appeal from Judge Albis' rulings on February 29, 2016, which was treated as an amended appeal by this court.

I

DEFENDANT'S MOTION FOR MODIFICATION

We initially set forth the well established standard of review and principles of law relevant to the defendant's claims pertaining to the denial of his motion to modify his support obligations. "The scope of our review of a

trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Nevertheless, we may reverse a trial court's ruling on a modification motion if the trial court applied the wrong standard of law. . . .

"[Section] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . *To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it.* Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . More specifically, these criteria, outlined in . . . § 46b-82, require the court to consider the needs and financial resources of each of the parties and their children, as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . .

"Thus, [w]hen presented with a motion for modification, a court must *first determine* whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . *Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification.* . . . The court has the authority to issue a modification

only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Citations omitted; emphasis added; footnotes omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, supra, 310 Conn. 671–74.

A

Alimony

The defendant claims that the trial court abused its discretion in denying his motion to modify his alimony obligation "by failing to properly find net income and by failing to properly compare circumstances at the time of the remand to the judgment." Specifically, the defendant argues that the court "improperly identified the defendant's June 4, 2009 financial affidavit as the starting point of analysis when the proper starting point was the court's finding of net income in the judgment on August 5, 2009," and that the court improperly declined to reduce his alimony obligation "based on consideration of the [§] 46b-82 factors despite the fact that none of these factors were in evidence."

"[I]t is well settled that a court must base its alimony award on the available net income of the parties . . . ." *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 689, 6 A.3d 141 (2010). "To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it." *Borkowski* v. *Borkowski*, 228 Conn. 729, 737–38, 638 A.2d 1060 (1994). In the present case, the last court order with respect to alimony was set forth in the August 5, 2009 dissolution judgment. Accordingly, the date of the dissolution judgment would be the starting point for the trial court's analysis. The motion for modification, as amended, was filed in June, 2010, and the initial hearing date on that motion was held on October 25, 2010. At that time, the parties submitted copies of financial affidavits that had been prepared for the dissolution trial in 2009, and current 2010 financial affidavits for the hearing on the defendant's motion for modification.

After the court's 2010 ruling on the motion for modification was reversed; *Olson* v. *Mohammadu*, supra, 310 Conn. 667; a rehearing on the defendant's motion for modification was held on April 21, 2014. The parties submitted 2009 and 2014 financial affidavits, together with tax returns for 2010, 2011, and 2012. Because of the length of time between the filing of the defendant's motion for child support and alimony modification in 2010 and the rehearing on that motion in 2014, the trial court was directed to take into account the period between the date of the filing of the motion and the date that the motion was heard at the rehearing, which spanned a number of years. "The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable

award based on those changes." *Zahringer* v. *Zahringer*, supra, 124 Conn. App. 689. "[T]he financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible. . . . [T]he proper date for determining income, for the purpose of deciding whether the plaintiff's current alimony award should be increased, decreased or remain the same, is the date of hearing on the motion to modify following the remand from our Supreme Court." (Citations omitted; internal quotation marks omitted.) Id., 688.[7]

On appeal, the defendant claims that the court improperly determined that the parties' net weekly income, at the time of the dissolution judgment, was as represented in the parties' June 4, 2009 financial affidavits. Those were the affidavits submitted by the parties and relied on by Judge Barall at the time the dissolution judgment was rendered. At the rehearing held on April 21, 2014, the defendant submitted the plaintiff's June 4, 2009 financial affidavit as an exhibit, and the plaintiff submitted the defendant's June 4, 2009 financial affidavit as an exhibit, all without objection. Moreover, both parties were questioned as to the information provided in those financial affidavits. During the closing argument, plaintiff's counsel specifically referred to the defendant's June 4, 2009 financial affidavit. The defendant now argues, however, that it was improper for the court to rely on those financial affidavits because Judge Barall found the defendant's net weekly income to be $2674 at the time of the dissolution judgment, rather than $2587 as stated in his June 4, 2009 financial affidavit.[8] No such argument was made before the court at the April 21, 2014 rehearing.

Additionally, the defendant cites no case law or statutory authority in support of his argument. Further, the defendant has presented no persuasive reason why the trial court should not have been allowed to rely on exhibits that were properly admitted at the rehearing on the defendant's motion for modification. "The accuracy of financial affidavits submitted at the time of dissolution has proven to be central to the issue of modification on appeal. . . . As a result, [o]ur cases have uniformly emphasized the need for full and frank disclosure in . . . [financial] affidavits. A court is entitled to rely upon the truth and accuracy of sworn statements required by . . . the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." (Citation omitted; internal quotation marks omitted.) *Fulton* v. *Fulton*, 156 Conn. App. 739, 746–47, 116 A.3d 311 (2015). For these reasons, the defendant's claim fails.

The defendant additionally claims that the court abused its discretion in denying his motion for alimony modification because it stated that it had considered

the factors set forth in § 46b-82 "despite the fact that none of these factors were in evidence." The parties agree that the evidence presented at the April 21, 2014 rehearing related only to the financial circumstances of the parties. In fact, no less than three times, the defendant emphasizes in his appellate brief that neither party presented evidence as to the § 46b-82 factors that a court must consider if it has found a substantial change in financial circumstances.

The defendant's argument is without merit. First, the court never found, for purposes of the defendant's request to reduce his alimony obligation, that there had been a substantial change in either party's financial circumstances. The defendant's burden to establish a substantial change in financial circumstances was a condition precedent to the court's consideration of his motion to modify his weekly alimony obligation from $777 to $120. Only after the defendant satisfied that requirement could the court properly consider his motion to modify his spousal support obligation. *Olson* v. *Mohammadu*, supra, 310 Conn. 674. Second, any failure to present evidence as to the § 46b-82 factors was a failure by the defendant to satisfy his burden to "demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it." (Internal quotation marks omitted.) Id., 672. It was neither the plaintiff's responsibility to provide, nor the court's responsibility to elicit, information as to those factors. On the basis of this record, we conclude that the court did not abuse its discretion in denying the defendant's motion to reduce his alimony obligation.

B

Child Support

The defendant claims that the trial court abused its discretion in denying his motion to modify his child support obligation because "the court improperly applied the Child Support Guidelines by overriding the definition of permissible deductions from gross income to calculate net income. Specifically, the court held that the defendant's deductions for insurance premiums and his health care account were not permissible deductions. This was plain error."

The defendant's analysis of this claim consists of a citation to a provision in the child support and arrearage guidelines and the statement that the defendant did not have a deduction for his health care account on his financial affidavit.[9] We conclude that the defendant's claim is inadequately briefed and that it would be speculative on the part of this court to determine that the trial court would have reduced the defendant's child support obligation if he had demonstrated that such deductions were appropriate.

We first note that the defendant has devoted less

than one page to his argument on this claim. Where a claim is simply asserted but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. See *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005) (this court not required to review inadequately briefed claims); see also *Barros* v. *Barros*, 309 Conn. 499, 503 n.4, 72 A.3d 367 (2013) (claim deemed abandoned for inadequate briefing); *State* v. *Weston*, 164 Conn. 635, 636, 325 A.2d 457 (1973) (claim not briefed on appeal, although argued during oral argument, treated as abandoned); *Braham* v. *Newbould*, 160 Conn. App. 294, 312 n.15, 124 A.3d 977 (2015) (claim abandoned that was not properly briefed because "[i]t is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately" [internal quotation marks omitted]).

The defendant's claim, even if deemed adequately briefed, also fails for the following reason. The court, in its memorandum of decision, as amended, stated: "The court has carefully considered the facts of this case, the relevant case law and the provisions of sections 46b-82 and 46b-86, and declines to modify the defendant's support obligations." Given the court's statement of the basis for its conclusion, it would be sheer speculation to assume that had the court credited the subject deductions it would have granted the defendant's motion to reduce his child support payments. When presented with the defendant's modification motion, the court had to first determine whether there had been a substantial change in the financial circumstances of one or both of the parties. Then, if the court found a substantial change in circumstances, it properly could consider the motion and, on the basis of the criteria set forth in General Statutes § 46b-84, it could make an order for modification. *Fox* v. *Fox*, 152 Conn. App. 611, 621, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014). "[T]hese criteria, as outlined in . . . § [46b-84], require the court to consider the needs and financial resources of each of the parties and their children . . . ." (Footnote omitted; internal quotation marks omitted.) Id., 620–21.

The court did not specify which particular facts it considered to be determinative, nor did it cite the case law upon which it relied. The court mentioned statutory provisions, but did not specify which criteria in those statutes that it found to be most compelling in this case. The court could have provided a more thorough discussion of the basis for its denial, but it was not required to do so.[10] The court "need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. . . . Nor need it give each factor equal weight." (Citation omitted; internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrow-*

*ski*, 273 Conn. 127, 137, 869 A.2d 164 (2005). "We recognize the well established presumption that a court has acted correctly when entering its orders, and we will affirm a court's orders if the record contains sufficient evidence to support them." *Coury* v. *Coury*, 161 Conn. App. 271, 286, 128 A.3d 517 (2015). Here, the court's determinations are supported by the record. For all of these reasons, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to reduce his child support obligation.

## II

### ORDER FOR ARREARAGE PAYMENT

The defendant's next claim is that Judge Albis improperly issued an order that required him to pay the plaintiff the sum of $6002, as set forth in a previous arrearage order, when the previous arrearage order had been suspended until all of the defendant's appeals were resolved. The following additional facts are necessary to the resolution of this claim.

On April 4, 2013, the court, *Carbonneau, J.*, entered the following order: "The defendant owes the plaintiff $6002, subject to any corrections, as his 66 [percent] of work related day care costs under the terms of the final judgment. Good faith payments shall be made within 60 days." This ruling was made after the defendant had appealed from Judge Adelman's 2010 denial of his motion for modification and after this court's decision affirming the trial court, but before the Supreme Court issued its decision on December 10, 2013, reversing this court's judgment and remanding the case back to this court with direction to remand the case to the trial court for a new hearing on the defendant's modification motion. The defendant maintained that the order to pay the $6002 arrearage was stayed because of the pending appeal. There were no good faith payments made by the defendant toward the $6002 day care expense arrearage.

On June 11, 2013, Judge Carbonneau, while presiding over a hearing on similar day care issues between the parties, referenced the pending Supreme Court appeal and discussed past due and future payments for day care expenses. Recognizing that the Supreme Court could issue a decision that would affect the percentage of such expenses owed by the defendant, Judge Carbonneau asked the parties if they could agree that "going forward, the parties will split fifty/fifty until we get some guidance from the Supreme Court. It may jump back up to 66 percent because those orders can only be altered by the Supreme Court at this point, but at least if you start at fifty/fifty, there would not be a great correction down the road depending on what the Supreme Court does." After further remarks by counsel, Judge Carbonneau stated: "And clearly I am temporizing until we get some finality from the appeal process.

The [defendant] is entitled to the appeal process. We will see how it goes. This gives you a plan forward." When questioned further by the plaintiff, Judge Carbonneau responded: "The past bills we'll hold in abeyance right now. You may make any argument that might pertain to that arrearage at a future time when we have the direction of the Supreme Court."

On September 10, 2015, which was nearly two years after the issuance of the Supreme Court's decision, the plaintiff filed a motion for contempt and/or order that would require the defendant to pay her the $6002 arrearage that had been found in April, 2013. The defendant claimed that Judge Carbonneau's "abeyance order" continued until all of his appeals had concluded, including the appeal that he had taken from Judge Ficeto's denial of his motion for modification after the April 21, 2014 rehearing. A hearing on the plaintiff's motion was held before Judge Albis on January 19, 2016. On February 10, 2016, he issued his memorandum of decision. Judge Albis concluded that Judge Carbonneau's "going forward . . . split fifty/fifty" ruling primarily was concerned with the future day care expenses, not the $6002 arrearage found in April, 2013, for past day care expenses.

Although Judge Albis did not find the defendant in contempt for a wilful violation of the arrearage order, because he credited the defendant's statement that he believed his appeals were "part of one continuous appeal process," Judge Albis nevertheless concluded that the "abeyance order" ended when the Supreme Court issued its remand decision and the trial court reconsidered and decided the modification motion. Judge Albis determined that there was no stay in place with respect to the April, 2013 day care expense arrearage order, that the defendant's present appeal was new and distinct from his prior appeal to the Supreme Court, and that he was not excused from paying the plaintiff the previously ordered sum of $6002. Accordingly, the court ordered the defendant to pay the plaintiff $6002 in consecutive monthly installments of $1000 each. This ruling is the subject of the defendant's amended appeal.

The defendant's claim on appeal is that the court improperly "vacat[ed] a valid prior order of the trial court holding arrearage payments in abeyance." Specifically, the defendant argues that Judge Albis' determination should be reversed by this court because Judge Albis failed to follow the law of the case doctrine. We disagree.

Assuming arguendo that Judge Carbonneau's abeyance order was ambiguous as to whether it would remain in effect until the Supreme Court issued its decision or until all of the defendant's appeals had been resolved, this claim fails because the law of the case doctrine did not compel Judge Albis to follow the prior order. The law of the case doctrine provides that

"[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 395, 865 A.2d 1223 (2005). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the *same case*, upon a question of law." (Emphasis added; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 130–31, 788 A.2d 83 (2002).

By the time the plaintiff's motion for contempt and/or order had been argued before Judge Albis, the Supreme Court's decision had been issued, the parties had participated in a rehearing on the defendant's modification motion, Judge Ficeto had denied the modification motion, and the defendant had filed another appeal with this court. Clearly, there were new circumstances for Judge Albis to consider. At this point, the April, 2013 order requiring the defendant to pay the $6002 arrearage for his share of unpaid child care expenses was several years old. We conclude that the ruling of Judge Albis was not improper.

### III

### APPELLATE ATTORNEY'S FEES

The defendant's final claim is that Judge Albis improperly granted the plaintiff's motion for appellate attorney's fees to defend the present appeal.[11] The defendant argues that the court erroneously determined that the plaintiff did not have sufficient liquid assets to pay her own fees because she had "substantial retirement assets" and her "financial situation has dramatically improved."

"[General Statutes §] 46b-62 (a) authorizes the trial court to award attorney's fees in a dissolution action when appropriate in light of the respective financial abilities of the parties and the equitable factors listed in § 46b-82. . . . [W]e [have] stated three broad principles by which these statutory criteria are to be applied. First, such awards should not be made merely because the obligor has demonstrated an ability to pay. Second, where both parties are financially able to pay their own fees and expenses, they should be permitted to do so. Third, where, because of other orders, the potential obligee has ample liquid funds, an allowance of [attorney's] fees is not justified. . . .

"A determination of what constitutes ample liquid funds . . . requires . . . an examination of the total

assets of the parties at the time the award is made. . . . We have recognized, however, that [t]he availability of sufficient cash to pay one's attorney's fees is not an absolute litmus test . . . . [A] trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award. . . .

"Whether to allow [attorney's] fees, and if so in what amount, calls for the exercise of judicial discretion by the trial court. . . . An abuse of discretion in granting [attorney's] fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Hornung* v. *Hornung*, 323 Conn. 144, 169–70, A.3d (2016).

In the present case, following a hearing on the plaintiff's motion for appellate attorney's fees, Judge Albis made the following findings: (1) the plaintiff did not have sufficient liquid assets with which to pay her own legal fees; (2) the plaintiff did not have sufficient income to pay those fees without using some of the child support payments she receives from the defendant, which would undermine the court's prior child support order; and (3) the income of the defendant would enable him to pay the sum of $10,000, payable in monthly installments of $1000, toward the plaintiff's appellate legal fees. The court was not persuaded by the defendant's argument that the plaintiff's retirement assets constituted sufficient liquid assets that would enable the plaintiff to pay her own fees.[12] The record supports Judge Albis' findings, and we, therefore, conclude that he did not abuse his discretion in awarding the plaintiff appellate attorney's fees to defend the present appeal.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's last name has been spelled as "Olsen" and "Olson" during these proceedings. In her complaint and her tax documents, submitted as exhibits at trial and the April 21, 2014 remand hearing, the plaintiff spelled her name "Olson."

[2] The court ordered that the alimony "shall be modifiable only as to amount" and "shall terminate upon the earliest of the happening of one of the following events . . . [the] death of either party . . . [the] [w]ife's remarriage; or . . . five (5) years from the date of dissolution."

[3] The court modified its decision in response to the defendant's motion for reconsideration and reargument filed on June 2, 2014.

[4] According to the court, "[i]t was during this brief period of unemployment and part-time employment that [the defendant] filed his motion for modification of child support and alimony."

[5] In the August 5, 2009 judgment of dissolution, the plaintiff was required to maintain medical insurance through her place of employment for the benefit of the minor child.

[6] The remainder of the court's orders in the February 10, 2016 memorandum of decision have not been challenged by either party.

[7] In the present case, our Supreme Court emphasized the applicability of the holding in *Zahringer* v. *Zahringer*, supra, 124 Conn. App. 672, for purposes of the remand hearing on the defendant's motion for modification. In footnote 16 of *Olson* v. *Mohammadu*, supra, 310 Conn. 686, our Supreme Court stated: "We note that at oral argument before this court, both parties agreed that, if this court were to conclude that the trial court improperly denied the defendant's motion for modification, a rehearing on the modifica-

tion motion would be appropriate. *In view of the time that has elapsed since the defendant filed his amended motion for modification, both parties further agreed that, if the trial court were to award a modification on rehearing, the court should follow the principles articulated in* Zahringer *v.* Zahringer, *124 Conn. App. 672, 6 A.3d 141 (2010), in fashioning an appropriate modification.* See id., 689 ('The retroactive award may take into account the long time period between the date of filing a motion to modify . . . and the date that motion is heard, which in this case spans a number of years. The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes. The current alimony need not be uniformly retroactive, if such a result would be inequitable.').'' (Emphasis added.)

[8] We note that the difference in the net weekly income amounts *is less than $100*. Further, in the transcript wherein Judge Barall explains the basis for his orders, he stated that he took into account the defendant's figure in his affidavit and made a slight adjustment for social security deductions.

[9] The defendant's statement is incorrect. The defendant's signed and dated October 25, 2010 financial affidavit lists a deduction of $41.96 per week attributable to "Health Care Acct."

[10] The defendant sought no articulation of the trial court's reasoning. See Practice Book § 66-5.

[11] "We note that the trial court is not limited to awarding attorney's fees for proceedings at the trial level. Connecticut courts have permitted post-judgment awards of attorney's fees to defend an appeal." *Pena* v. *Gladstone*, 168 Conn. App. 175, 187 n.10,     A.3d     (2016).

[12] As noted by the court: "The defendant suggests that the plaintiff use her substantial retirement assets to pay her own legal fees for defending the appeal, even if it means incurring taxes and penalties for premature withdrawal. The plaintiff receives no current distributions from her retirement accounts."