******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIAM MARSHALL, JR. *v.* KIMBERLY L. MARSHALL
## (AC 41216)

Alvord, Elgo and Pellegrino, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court, claiming, inter alia, that the trial court erred when it went beyond the scope of this court's remand order in a prior appeal involving the parties when construing their separation agreement, which had been incorporated into the dissolution judgment, and calculating the alimony arrearage the plaintiff owed to the defendant. In her prior appeal to this court from the judgment dissolving her marriage, the defendant claimed that the dissolution court erred in calculating the plaintiff's alimony obligation on the basis of his W-2 income without considering the K-1 distributions to him from A Co., of which he was an owner. This court concluded that the separation agreement was ambiguous as to whether the K-1 distributions from A Co. were to be included in the plaintiff's pre-tax income from employment and, if so, to what extent. This court further concluded that the dissolution court had improperly granted the plaintiff's motion to modify alimony. In its rescript, this court thus reversed the dissolution court's granting of the plaintiff's motion to modify alimony and the court's calculation of his alimony arrearage, affirmed the judgment in all other respects and remanded the case to the trial court to determine the parties' intent and to determine the plaintiff's alimony arrearage accordingly. On remand, the trial court first determined that the intent of the parties was that some K-1 distributions to the plaintiff from A Co. should be included in the plaintiff's pre-tax income. The court then found that the parties had adopted the reasonable compensation calculation to establish the plaintiff's pre-tax income for alimony purposes and modified his alimony obligation for the nearly four years prior to the plaintiff's motion to modify alimony. *Held*:

1. The trial court acted within the scope of this court's remand order when it used the methodology of reasonable compensation to determine the plaintiff's pre-tax income in the context of effectuating the parties' separation agreement, the relevant provisions of which this court had determined to be ambiguous: the trial court's use of the plaintiff's reasonable compensation instead of his pre-tax income did not alter the terms of the separation agreement and change the formula on which the dissolution proceedings were premised.

2. The defendant could not prevail on her claim that the trial court erred when it used the plaintiff's reasonable compensation to determine his alimony obligation, which was based on her assertion that this court's determination that the alimony calculation was to be made using pre-tax income was the law of the case: because the trial court acted within the scope of this court's remand order, it could not have violated, and did not fail to abide by, the principle that an appellate court's opinion establishes the law of the case, and, contrary to the defendant's assertion, this court's affirmance of the trial court's judgment in all respects other than its granting of the plaintiff's motion to modify alimony and calculation of his arrearage did not mean that the trial court correctly used his actual income rather reasonable compensation to calculate the arrearage and did not establish the trial court's calculations as the law of the case on remand; furthermore, this court's affirmance of the trial court's judgment in other respects addressed the trial court's decisions to decline to award the defendant interest and to reject her claim that the trial court erred in failing to find the plaintiff in contempt.

3. The defendant's claim that the trial court improperly considered the plaintiff's argument, which he did not advance in prior proceedings, that his alimony obligation should be based on his reasonable compensation was unavailing; although the defendant's assertion rested on the principle that an appellant who fails to brief a claim abandons that claim, the plaintiff was the appellee in this appeal and in this court's

decision that reversed in part the trial court's judgment, and our Supreme Court has declined to depart from the principle that an appellee will not be deemed to have forfeited a claim that could have been, but was not, brought in the context of an appellant's appeal.

4. The trial court's determination of the plaintiff's pre-tax income on the basis of his reasonable compensation was not clearly erroneous, as the court reasonably found that the parties had adopted the reasonable compensation calculation in their separation agreement and properly carried that methodology forward, that determination having been supported by evidence in the record.

5. Contrary to the defendant's claim, the trial court did not improperly modify alimony retroactively for a period of four years prior to the plaintiff's motion to modify alimony, that court having interpreted and effectuated the separation agreement's alimony provision as it was directed to by this court's remand order; the trial court determined the plaintiff's alimony obligation for those four years, calculated the overpayment or underpayment for each year and, after having separately found that the plaintiff had established a substantial change in circumstances, reduced his alimony obligation to zero retroactive to the day after he served the defendant with his motion to modify alimony.

Argued May 15—officially released October 6, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Alander, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Klatt, J.*, denied the defendant's motion for contempt and granted the plaintiff's motion to modify alimony, and the defendant appealed to this court, *Beach*, *Sheldon* and *Norcott, Js.*, which reversed in part the trial court's judgment and remanded the case for further proceedings; subsequently, the court, *Hon. Gerald I. Adelman*, judge trial referee, granted the plaintiff's motion to modify alimony and the defendant's motion for contempt in part, and the defendant appealed and the plaintiff cross appealed to this court. *Affirmed.*

*George J. Markley*, for the appellant-cross appellee (defendant).

*Alexander J. Cuda*, for the appellee-cross appellant (plaintiff).

*Opinion*

ALVORD, J. The defendant, Kimberly L. Marshall, appeals from the rulings of the trial court on her motion for contempt and the motion of the plaintiff, William Marshall, Jr., to modify his alimony obligation. On appeal, the defendant claims that the court improperly (1) exceeded the scope of this court's remand orders in her prior appeal,[1] (2) failed to abide by the law of the case as established in the decisions of both the trial court and this court in her prior appeal, (3) allowed the plaintiff to claim that his alimony obligation should be determined using reasonable compensation when he had not made that argument at any time prior to the hearing on remand, (4) used reasonable compensation as a basis for calculating the plaintiff's alimony obligation when the parties' separation agreement (agreement) did not provide for that method, and (5) retroactively modified the plaintiff's alimony obligation for a period of nearly four years prior to the plaintiff's motion to modify. We affirm the judgment of the trial court.[2]

The following facts, as set forth by this court in the defendant's prior appeal; see *Marshall* v. *Marshall*, 151 Conn. App. 638, 640, 97 A.3d 1 (2014) (*Marshall I*); and procedural history are relevant to our resolution of this appeal. "The parties were married in 1981. Four children were born of the marriage; only one was a minor at the time of dissolution. In 2006, the plaintiff filed a complaint seeking dissolution of his marriage to the defendant. In May, 2007, the court rendered judgment of dissolution and incorporated by reference [the agreement] between the parties, which the court found to be fair and equitable." Id.

Article 4 of the agreement is entitled "alimony and child support." Paragraph 4.1 provides: "For purposes of this Article Four, 'pre-tax income from employment' shall only include salary and cash bonus received by the [plaintiff] in cash (or check) from employment before any deductions, including, but not necessarily limited to federal, state or municipal income taxes, social security, Medicare, insurance of any kind, or payments by the [plaintiff] to any defined contribution plan, e.g. a 401 (k) plan. The foregoing to the contrary notwithstanding, specifically excluded from this definition of 'pre-tax income from employment' shall be . . . (v) Subchapter S distributions received by the [plaintiff] by virtue of his forty (40%) percent interest in Artisans Home Builders, Inc. or other like distributions from any company in which the [plaintiff] acquires an ownership interest . . . ."

Paragraph 4.2 of the agreement provides that, commencing June 1, 2007, and until the death of either party, the defendant's remarriage or cohabitation, or sixty months, whichever shall first occur, "the [plaintiff] shall pay unallocated alimony and child support in cash

to the [defendant] as follows: an amount equal to forty (40%) percent of the [plaintiff's] pre-tax income from employment, which income the parties stipulate to be $192,000 per year."[3] Paragraph 4.2 of the agreement also provides: "The $192,000 pre-tax income from employment is based upon the accepted opinion of a joint appraisal conducted by Meyers, Harrison & Pia as to the fair market value of the [plaintiff's] 40% interest in Artisans, Maker of Fine Homes, Inc. (Artisans). Said appraisal concluded that reasonable and appropriate compensation levels of the [plaintiff] for the year ended in December 1, 2005 is $175,000. In addition to the $175,000, the parties agree to include, as 'pre-tax income' monies paid directly by Artisans for the benefit of the [plaintiff]. Currently, this direct payment benefit consists of the payment of medical insurance premium in the approximate annual amount of $17,000. Accordingly, for purposes of modification, the parties have ascribed a base salary of $175,000 plus additional direct benefits of $17,000 for a total pretax income of $192,000. Specifically excluded from this pre-tax income and not to be considered in a modification hearing is the return on investment the [plaintiff] receives as an equity holder in the business. By way of example, in 2005, the [plaintiff's] income from wages and salaries (W-2) and S Corporation income (K-1) was $681,982. Notwithstanding, because the earnings of Artisans (i.e. in sums in excess of $192,000) were used to value Artisans as an asset, monies the [plaintiff] receives in excess of $192,000 shall not be considered a 'pre-tax income from employment.' "

Paragraph 4.4 provides: "If the [plaintiff's] base salary and direct benefits from Artisans Home Builders, Inc., or a subsequent employer, exceeds or is less than $192,000, the [plaintiff] shall immediately notify the [defendant] of such change and advise her of the amount of increase or decrease. The change in the [defendant's] entitlement of the forty (40%) percent or thirty-seven and one-half (37 1/2 %) percent, whether more or less, shall be effective on the first day of the month following the [plaintiff's] receipt of a salary increase or of a salary decrease."

Paragraph 4.6 of the agreement states: "Either party shall have the right to move for modification of the provisions of paragraphs 4.1, 4.2 and 4.3 in the event there is a substantial change in the nature of the [plaintiff's] compensation and/or the [plaintiff] is no longer employed by Artisans Home Builders, Inc. and/or no longer has an ownership interest in Artisans Home Builders, Inc."

The plaintiff paid alimony of $76,010 in 2008 and $17,200 in 2009. In 2010 and 2011, the plaintiff paid no alimony. "In August, 2011, the plaintiff filed a postjudgment motion to modify alimony on the ground that the agreement provided that either party had the right to

move for modification of alimony on the basis of a substantial change in circumstances and that there had been such a change. In September, 2011, the defendant filed a postjudgment motion for contempt on the ground that the plaintiff had failed to pay unallocated alimony and child support as provided in the agreement. In that motion, the defendant also sought counsel fees and statutory interest. In March, 2012, after a hearing on the motions, the court [*Klatt, J.*] denied the defendant's motion for contempt, declined to award the defendant attorney's fees or statutory interest, and granted the plaintiff's motion to modify." *Marshall I*, supra, 151 Conn. App. 640.

"In its March, 2012 decision, the court found that the plaintiff paid alimony in accordance with the agreement in 2007 and 2008, that he reduced alimony payments to $3200 for the first six months of 2009, and that he stopped all alimony payments as of July 1, 2009. The court noted that the plaintiff testified that he was an owner of Artisans, a company that built custom homes, and that by 2009, Artisans had suffered a significant decline in business. The court found that the plaintiff's income was $192,000 in 2007, that it had been reduced to $72,000 by 2009, and remained at approximately $72,000 for 2010 and 2011.

"The court determined that paragraph 4.4 of the agreement was self-executing and provided a straightforward formula for calculating unallocated alimony and child support obligation that was based on certain increases or decreases in income. The court concluded that the agreement did not provide for the complete cessation of alimony payments in the event of a change in income; rather, the plaintiff should have reduced his alimony payments, in accordance with paragraph 4.4, to 40 percent of his W-2 income. The court found that the plaintiff's yearly W-2 salary in 2009 was $72,000 and concluded that he owed $2400 per month for that year. The court found that the plaintiff owed alimony in the following amounts: $14,400 for the year 2009 (six months @ $2400/month); $28,800 for the year 2010 (twelve months @ $2400/month); $19,200 for the year 2011 (eight months @ $2400/month); for a total of $62,400 to be paid in monthly installments of $2400 until paid in full. The court modified the plaintiff's alimony payments pursuant to paragraph 4.6 of the agreement to $1 per year retroactive to August 31, 2011." Id., 643–44.

The defendant then filed an appeal with this court, claiming, inter alia, that the trial court erred in calculating the amount of alimony owed by the plaintiff under the agreement. Id., 639. The defendant's specific claim in *Marshall I* was that the court erred in calculating the plaintiff's alimony obligation on the basis of his W-2 income only, without considering the distributions he received from Artisans. Id., 644–45. This court concluded that the agreement was ambiguous "as to

whether the plaintiff's distributions from Artisans, or K-1 income, were to be included in 'pre-tax income from employment' and, if so, to what extent." Id., 648. This court reasoned: "Paragraph 4.1 specifically excludes '[s]ubchapter S distributions' from the definition of 'pre-tax income from employment.' Paragraph 4.2, however, does not limit 'pre-tax income from employment' to W-2 income only. That paragraph defines 'pre-tax income from employment' as 'base salary' plus additional benefits. In paragraph 4.2, the parties used the fair market value of the plaintiff's 40 percent interest in Artisans to arrive at 'reasonable and appropriate compensation levels' for the plaintiff's 'base salary' for the 2005 tax year. The plaintiff's 2007 amended federal 1040 form indicated that his W-2 income was $126,144, which amount is less than the stipulated amount in paragraph 4.2 of $175,000 for the plaintiff's base salary. Paragraph 4.4 provides for a modification if the plaintiff's 'base salary and direct benefits' should be greater or less than $192,000. In order to reconcile paragraphs 4.1 and 4.2, and to determine the extent to which K-1 income is to be included in the calculation of 'base salary,' the trial court must engage in fact-finding as to the intent of the parties." (Footnote omitted.) Id., 648. Having found the agreement ambiguous, this court remanded the case to the trial court to determine the intent of the parties and the arrearage.[4] Id.

This court in *Marshall I* also addressed the defendant's claim that the trial court improperly granted the plaintiff's motion to modify alimony, concluding: "The court erred in comparing 'apples and oranges' and determining the amount of the plaintiff's compensation for 2007 through 2011, and calculating a 60 percent change in income by comparing the stipulated income of $192,000 in 2007, which included direct benefits and some K-1 income, with the plaintiff's W-2 income only for the subsequent years. Paragraph 4.6 [of the agreement] specifies that either party shall have the right to move for modification of [of the provisions of paragraphs 4.1, 4.2 and 4.3] in the event there is a 'substantial change in the nature of the [plaintiff's] compensation . . . .' It is perhaps significant that the agreement uses the term 'compensation,' in paragraph 4.6, rather than 'pre-tax income' or another term previously used in article 4. In any event, because the factual basis underlying the court's granting of the plaintiff's motion for modification is clearly erroneous, we remand this issue to the trial court for further proceedings." Id., 657. This court's rescript provided: "The judgment is reversed with respect to the granting of the plaintiff's motion to modify alimony and the calculation of the amount of the alimony arrearage owed by the plaintiff to the defendant and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects." Id., 658.

On remand, the court, *Hon. Gerard I. Adelman,* judge

trial referee, ruled that it "would bifurcate the issues by first deciding whether or not all or any portion of the plaintiff's K-1 income was to be included in the modification hearing and then, based on the first ruling, hold a second hearing to establish the amount of the plaintiff's income. At the second hearing, the court would rule on the motion for modification and perhaps set a new alimony order in compliance with the original agreement of the parties."

The court held the first part of the bifurcated hearing on July 19 and 25, 2016. Both parties testified, as did Attorneys Ellen Lubell and Melissa J. Needle, who represented the defendant and the plaintiff, respectively, at the time of the dissolution, and Mark Harrison, who performed a business valuation as it related to the plaintiff's interest in Artisans as of September 30, 2006. Following the conclusion of the hearing on July 25, 2016, the court issued the following oral ruling: "[T]he intent of the parties was that in reaching the reasonable compensation, the court should consider income, even including some distributions from the business, irregardless of the fact that Mr. Marshall got to keep his 40 percent interest and it was excluded. Because I think the intent of the parties was to include it in some level."

The second part of the hearing was held over three days on October 23, 24 and 25, 2017. The court heard the testimony of both parties; the plaintiff's former business partner, Christopher Phillips; the plaintiff's expert witness, John Kramer; and the defendant's expert witness, John M. Leask II.

Kramer, a certified public accountant with experience in valuation of closely held businesses, testified that he was retained by the plaintiff to determine his reasonable compensation from employment from 2008 through 2011. Kramer testified generally that, when valuing a closely held business, the income stream is split into reasonable compensation and return on investment. He testified that the reasonable compensation component is "basically the amount that somebody like Mr. Marshall would be paid if he were not an owner, if he had to hire somebody to perform his . . . functions of the business," whereas the return on investment is "the piece that went into determining [what his] interest was worth—I think the number was 845,000."[5]

Kramer testified that he had reviewed the parties' agreement, the valuation report prepared by Harrison, Artisans' tax returns and financial statements, the plaintiff's personal tax returns, updated salary surveys that had been used by Harrison in his analysis, and transcripts of Phillips' deposition testimony. In addition to speaking to David Bailey, Artisans' certified public accountant, Kramer also spoke with Harrison and his associate, Joseph DeCusati, regarding the methodology they had used to determine reasonable compensation for the valuation report they had prepared. Kramer testi-

fied that he had recalculated what Harrison and DeCusati had done and talked to them about his recalculations to "make sure that it was appropriate" and then "carried forward that . . . same methodology to the relevant years." Kramer testified that the methodology involved multiplying the gross revenue of the business by a certain percentage to determine reasonable compensation. Harrison had determined, following his review of certain compensation surveys,[6] that 2 percent "was an appropriate percentage to use for this particular business company of a size of $18 million in the home-building industry, and that was the basis for [Harrison's] calculation of normalized compensation."

Regarding the formula Kramer used to determine the plaintiff's reasonable compensation in 2008, Kramer testified: "I did a similar calculation to . . . Harrison . . . . I wanted to keep it comparable to what they had done. So I took the sales of Artisans. That would've come from the company's tax returns and financial statements. That just represents the gross sales. Multiplied by a percentage, and that's really where I did the bulk of my work, determining what the appropriate percentage should be as a result of looking at [Risk Management Association (RMA)] and BizMiner and Integra for . . . the appropriate years here, determined in this particular case that 2.5 percent is the appropriate percentage to use for company's that's doing about $9 million in sales in this particular industry. So, I multiplied the sales by the percentage to get the total . . . reasonable compensation." See footnote 6 of this opinion. Kramer testified that he performed a similar calculation for 2009 through 2011, adjusting the percentage as necessary on the basis of his examination of the compensation surveys.

Although the plaintiff held a 40 percent ownership interest in Artisans, Kramer testified that he assigned 50 percent of the total reasonable compensation to the plaintiff, as Harrison had done. Kramer testified that, when Harrison did his valuation, he "treated the owners as equal for this purpose, so I . . . carried it forward and used the 50 percent." With respect to the plaintiff's medical benefits, Kramer testified that, for 2010 and 2011, he used the figure reported by Artisans on the plaintiff's K-1 tax form. For 2008 and 2009, Kramer spoke with Bailey, who verified the amount Artisan paid for the plaintiff's medical benefits.[7] On the basis of his calculations, Kramer found the plaintiff's reasonable compensation and direct medical benefits to be $134,500 for 2008, $61,500 for 2009, $115,800 for 2010, and $126,400 for 2011. Kramer recorded these findings in a schedule of the plaintiff's reasonable compensation.

The defendant's expert witness, Leask, also a certified public accountant with experience in valuation of closely held businesses, testified that he was retained by the defendant to determine the plaintiff's income

from Artisans. He determined the plaintiff's net income share, i.e., what the plaintiff would have earned had Artisans' distributed 100 percent of its earnings.

On December 14, 2017, the court issued its memorandum of decision. It made the following relevant findings of fact: "The court has used the concept of reasonable compensation to determine the pre-tax income (reasonable compensation) of the plaintiff for the purposes of calculating the alimony owed for each year . . . . Based on that concept, the plaintiff's gross income for purposes of alimony modification calculations was $134,500 for 2008; $61,500 for 2009; $115,800 for 2010, and $126,400 for 2011 . . . . Using 40 percent (40%) of gross income to arrive at the alimony obligation, as agreed to by the parties in their agreement and the order of the court, the plaintiff's alimony obligation for 2008 was $53,800; for 2009, it was $24,600; for 2010, it was $46,320; and for 2011, it was $50,560 . . . . Accepting as accurate the tax returns of both parties, the overpayment for 2008 would be $22,210. In 2009, the plaintiff paid to the defendant a total of $17,200, which would be an underpayment of $7400. In 2010, the plaintiff paid no alimony at all to the defendant for an underpayment of $46,320 and, in 2011, there was no alimony paid for an underpayment of $50,560. Those amounts total $82,270 . . . . Both parties agree that the plaintiff paid to the defendant an additional $62,400 as ordered by the court (*Klatt, J.*) after the January 2012 hearing . . . . There had been a substantial change in the financial circumstance for both parties for the year 2011 and going forward . . . . The court finds that based on the relative financial circumstances of the parties for 2011, the appropriate alimony payment should be modified to zero retroactive to September 1, 2011, thereby reducing the arrearage for that year by $16,853 ($4213.33 per month for four months, so that the alimony owed for 2011 would be modified to $33,707) . . . . After applying credits for all payments and reducing the obligation retroactive to September 1, 2011, the plaintiff would owe to the defendant alimony in the amount of $2817 (—$22,210 + $7400 + $46,320 + $33,607 = $65,217 — $62,400 = $2817) . . . ." (Footnote omitted.)

Accordingly, the court granted the plaintiff's August 16, 2011 motion to modify alimony and ordered the plaintiff's alimony obligation for 2008 through 2010 and the first eight months of 2011 reduced to "40 percent of the plaintiff's reasonable compensation as found by the court . . . ." See footnote 14 of this opinion. It further ordered the plaintiff's alimony obligation for the last four months of 2011 reduced to zero. The court granted the defendant's September 29, 2011 motion for contempt only as to the finding of the arrearage in the amount of $2817 and denied the plaintiff's March 7, 2017 motion for an order regarding an alimony overpayment. This appeal followed.

## I

The defendant first claims that the court "erred by going far beyond the scope of the Appellate Court remand orders." Specifically, she argues that "[t]he Appellate Court never instructed the trial court to determine whether the Agreement required the application of the formula to the plaintiff's pre-tax income or instead to his 'reasonable compensation.' " The plaintiff responds that "the trial court's orders utilizing a reasonable compensation approach were in adherence to the scope of the Appellate Court's remand and should be affirmed." We agree with the plaintiff.

We first set forth our standard of review and relevant principles of law. "Determining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis. . . . Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . .

"At the outset, we note that, [i]f a judgment is set aside on appeal, its effect is destroyed and the parties are in the same condition as before it was rendered. . . . As a result, [w]ell established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . .

"Compliance [with a mandate] means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . No judgment other than that directed or permitted by the reviewing court may be rendered. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . We are mindful, however, that [w]e have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citations omitted; emphasis

omitted; internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 383–85, 3 A.3d 892 (2010).

In applying these principles to the present case, we first review our analysis, remand and mandate in *Marshall I*. As set forth previously in this opinion, this court, in *Marshall I*, found the agreement ambiguous "as to whether the plaintiff's distributions from Artisans, or K-1 income, were to be included in 'pre-tax income from employment' and, if so, to what extent." *Marshall I*, supra, 151 Conn. App. 648. Paragraph 4.1, as this court noted, "specifically excludes '[s]ubchapter S distributions' from the definition of 'pre-tax income from employment,' " while paragraph 4.2 "does not limit 'pre-tax income from employment' to W-2 income only" and instead defines " 'pre-tax income from employment' as 'base salary' plus additional benefits." Id. This court acknowledged that, "[i]n paragraph 4.2, the parties used the fair market value of the plaintiff's 40 percent interest in Artisans to arrive at 'reasonable and appropriate compensation levels' for the plaintiff's 'base salary' for the 2005 tax year." Id. This court further stated that the plaintiff's 2007 tax return indicated that his W-2 income of $126,144 was below the stipulated base salary amount of $175,000 in paragraph 4.2. Id. This court reiterated that paragraph 4.4 provides for a modification if the plaintiff's "base salary and direct benefits" should be greater or less than $192,000. Id. As framed by this court, paragraphs 4.1 and 4.2 required reconciliation. Id. This court recognized that the reconciliation process would involve a "determin[ation] [of] the extent to which K-1 income is to be included in the calculation of 'base salary,' " which required "fact-finding as to the intent of the parties." Id. Having found the agreement ambiguous, this court remanded the matter to the trial court "to determine the intent of the parties and to determine the arrearage accordingly." Id. This court "remanded [the case] for further proceedings consistent with this opinion." Id., 658.

On remand, the trial court bifurcated the hearing. It first took up this court's mandate to engage in "fact-finding as to the intent of the parties." Id., 648. At the conclusion of the first portion of the hearing on July 25, 2016, the court issued its factual finding: "[T]he intent of the parties was that in reaching the reasonable compensation, the Court should consider income even including some distributions from the business, irregardless of the fact that Mr. Marshall got to keep his 40 percent interest and it was excluded . . . ." The court determined that "the intent of the parties was to include [K-1 distributions] in some level." The court stated that, in the next portion of the hearing, "[w]hat Mr. Marshall's actual compensation was, is going to become . . . the key. And whether or not you need a new evaluation to decide what reasonable compensation is or not, I'll leave that to the parties . . . ."

The court then held the second portion of the hearing, during which it heard expert testimony proffered by both parties. In its memorandum of decision, the court found that the parties had "adopted the 'reasonable compensation' calculation to establish income for alimony and child support purposes." The court saw "no reason not to follow that agreed-upon methodology going forward." It found Kramer's calculations "to be a fair and reasonable adaptation of those done by [Harrison] the mutual expert witness for the parties' 2007 agreement." The court thereafter determined the plaintiff's pre-tax income for the relevant years and determined the amount of the arrearage, as directed by this court in its remand order.

A thorough examination of this court's opinion in *Marshall I* and the proceedings on remand leads us to reject both the defendant's narrow interpretation of our remand order and her representation of the court's decision on remand.[8] She contends that this court's remand order in *Marshall I* restricted the trial court's inquiry to "whether the K-1 income was to be included in the plaintiff's pre-tax income." Once the court determined that the K-1 income was to be included, the defendant maintains, the court's only tasks "were to confirm the amount of the K-1 income in each of the years in question, to add it to the plaintiff's W-2 income and direct benefits of $17,000, and to multiply the resulting number by 40% to determine the plaintiff's alimony in each year." We disagree that this court's order so constrained the court on remand. Moreover, we disagree with the defendant's arguments that the court "us[ed] the plaintiff's 'reasonable compensation' instead of his pre-tax income" and, in doing so, "alter[ed] the terms of the parties' agreement" and "changed the formula" on which the postdissolution proceedings had been premised. We conclude that the court acted within the scope of the remand order in *Marshall I* when it used the methodology of reasonable compensation to determine the plaintiff's pre-tax income in the context of effectuating the terms of the parties' separation agreement, the relevant provisions of which this court had determined to be ambiguous.

II

The defendant's second claim on appeal is that "[t]he Appellate Court's determination that the alimony calculation was to be made on the basis of plaintiff's pre-tax income was the law of this case which the trial court was bound to follow, [and the court on remand] erred when [it] based the plaintiff's alimony obligation on his supposed 'reasonable compensation' instead." The plaintiff responds that "[h]ow to calculate [the] [p]laintiff's income was relevant and not extraneous to the issues and purposes of the remand. Therefore, it was within the scope of the remand, and outside the scope of any 'law of the case' in this matter." We agree

with the plaintiff.

We first set forth our standard of review and relevant legal principles. "[T]he application of the law of the case doctrine involves a question of law, over which our review is plenary." (Internal quotation marks omitted.) *Stones Trail, LLC* v. *Weston*, 174 Conn. App. 715, 739, 166 A.3d 832, cert. denied, 327 Conn. 926, 171 A.3d 59 (2017). "The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 169 Conn. App. 243, 263, 149 A.3d 198, cert. denied, 324 Conn. 903, 151 A.3d 1289 (2016). "Intervening appellate proceedings, however, change the nature of this seemingly discretionary doctrine. [I]t is a well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court." (Internal quotation marks omitted.) *Fazio* v. *Fazio*, 199 Conn. App. 282, 289–90, A.3d (2020).

The defendant argues that the trial court on remand failed to "abide by the law of the case as established through the prior decisions" in *Marshall I* by both the trial court and this court. We first discuss this court's opinion. As set forth in part I of this opinion, this court in *Marshall I* concluded that the relevant provisions of the agreement were ambiguous and remanded for a determination "as to whether the plaintiff's distributions from Artisans, or K-1 income, were to be included in 'pre-tax income from employment' and, if so, to what extent." *Marshall I*, supra, 151 Conn. App. 648. Because we have concluded in part I of this opinion that the trial court properly acted within the scope of the remand order in rendering its decision, it could not have violated the principle "that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial . . . ." (Internal quotation marks omitted.) *Fazio* v. *Fazio*, supra, 199 Conn. App. 289–90. It necessarily follows that the trial court did not fail to abide by the law of the case of this court's opinion in *Marshall I*.

Moreover, in *Marshall I*, this court concluded that

the trial court erred in calculating the amount of alimony owed by the plaintiff under the agreement and "remand[ed] the case to the trial court for further proceedings on this issue." *Marshall I*, supra, 151 Conn. App. 640. Specifically, this court reversed the judgment of the trial court "with respect to the granting of the plaintiff's motion to modify alimony and the calculation of the amount of the alimony arrearage owed by the plaintiff to the defendant . . . ." Id., 658. Notwithstanding this language, the defendant argues that this court's affirmance of the trial court in all other respects, means that "[the trial court in *Marshall I*'s] calculation of the arrears using the plaintiff's actual income and not his 'reasonable compensation' was correct, was affirmed by the Appellate Court, and became the law of this case." We disagree that this court's statement that "[t]he judgment is affirmed in all other respects"; *Marshall I*, supra, 658; established the trial court's calculations as the law of the case. This court's opinion in *Marshall I* also held that the trial court did not abuse its discretion in declining to award the defendant statutory interest and rejected the defendant's claim that the court erred in failing to find the plaintiff in contempt. Id., 651, 652. This court "discern[ed] no basis on which to disturb the court's conclusions regarding contempt" and explained that "[t]he court's failure to find wilfulness—an issue on which the defendant had the burden of proof—would not logically be altered on remand." Id., 651. On the basis of the foregoing, we conclude that the calculations found in the trial court opinion in *Marshall I* did not constitute the law of the case on remand, and that this court's affirmance of the judgment in other respects addressed the trial court's statutory interest and contempt conclusions.

### III

The defendant's third claim on appeal is that "it was improper for the trial court to consider an argument never previously presented by the plaintiff and which, in fact, was directly contradictory to the position that the plaintiff had maintained from the outset of this matter until the remand hearing." Specifically, the defendant argues that, until the hearing on remand, the plaintiff "never suggested that the alimony to be paid ought to be based on an annual determination of what his 'reasonable compensation' might be in light of the value of Artisans as it changed from time to time." According to the defendant, because the plaintiff failed to argue in *Marshall I* that alimony should be based on an annual determination of his reasonable compensation, either before the trial court or by way of cross appeal, he should not have been permitted on remand to argue that his pre-tax income should be determined on the basis of reasonable compensation.[9] We disagree.

The defendant's argument rests on the principle that "[a]n *appellant* who fails to brief a claim abandons it

. . . ." (Emphasis in original; internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 319, 50 A.3d 841 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013). "As the [United States Court of Appeals for the Third Circuit] has explained, [a]dherence to the rule that a party waives a contention that could have been but was not raised on [a] prior appeal . . . is, of course, necessary to the orderly conduct of litigation. Failure to follow this rule would lead to the bizarre result . . . that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost. . . . In keeping with this reasoning, this court previously has refused to consider claims on subsequent appeals by the same party in which [n]o valid reason has been alleged as to why the [appellant] could not have brought the present claim when the prior one was brought." (Citations omitted; internal quotation marks omitted.) Id.

The defendant relies on *O'Brien* v. *O'Brien*, 161 Conn. App. 575, 581, 128 A.3d 595 (2015), rev'd on other grounds, 326 Conn. 81, 161 A.3d 1236 (2017), as support for her argument that the plaintiff's failure to cross appeal from the trial court's opinion in *Marshall I* precluded him from arguing on remand for a determination of his pre-tax income on the basis of his reasonable compensation. In *O'Brien*, the dissolution court treated all unvested stock options held by the plaintiff at the time of dissolution as marital property subject to equitable distribution. Id., 580–81. The plaintiff appealed from the judgment of dissolution but did not challenge the property division orders. Id., 581. After remand, the plaintiff again appealed to this court. Id., 576. In his second appeal, the plaintiff raised an argument that the unvested stock options were not marital property and, therefore, he could not have violated the automatic orders applicable in all marital dissolution actions; see Practice Book § 25-5; by converting certain of his stock options into cash. *O'Brien* v. *O'Brien*, supra, 580 n.4. This court concluded that "[b]ecause the plaintiff could have challenged the court's treatment of the stock options as marital property in his prior appeal but failed to do so, the plaintiff has waived his right to argue that the unvested stock options were not marital property and, thus, that their exercise could not have violated the automatic orders." Id. This court further concluded that "[t]he plaintiff similarly has waived any argument, now or on further remand, that the proceeds resulting from the exercise of those options are not subject to distribution by the court in accordance with General Statutes § 46b-81." Id. The present case is distinguishable from *O'Brien* in that the plaintiff in the present case was the appellee in *Marshall I* and is, once again, the appellee in this appeal.[10] See footnote 2 of this opinion. This court in *O'Brien* cited *Harris*, in which our

Supreme Court declined to depart "from the previously announced general principle that an appellee will not be deemed to have forfeited a claim that could have been, but was not, brought in the context of the appellant's appeal." *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, supra, 306 Conn. 324. Thus, *O'Brien* does not lend support to the defendant's claim.[11]

Accordingly, we reject the defendant's argument that plaintiff was barred from arguing that his pre-tax income should be determined on the basis of reasonable compensation because he did not advance such a theory in prior proceedings.

IV

The defendant next claims that the court improperly used the plaintiff's reasonable compensation as the basis for alimony calculations where the "agreement does not provide for that method." We disagree.

At the outset, we note that, because this court determined in *Marshall I* that the agreement is ambiguous, the interpretation of the agreement by the trial court on remand is subject to the clearly erroneous standard of review. "It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is a contract between the separating parties. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Hammond* v. *Hammond*, 145 Conn. App. 607, 611–12, 76 A.3d 688 (2013); see also *Thoma* v. *Oxford Performance Materials, Inc.*, 153 Conn. App. 50, 62, 100 A.3d 917 (2014) (reviewing court's resolution of ambiguous contract provision under clearly erroneous standard because "[w]hen . . . a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved" (internal quotation marks omitted)). "The interpretation of a contract term that is not so clear as to render its interpretation a matter of law is a question of fact, subject to the clearly erroneous standard of review. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Bijur* v. *Bijur*, 79 Conn. App. 752, 759, 831 A.2d 824 (2003). "This court has stated frequently that [a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . While conducting our review, we properly afford the

court's findings a great deal of deference because it is in the unique [position] to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us."[12] (Internal quotation marks omitted.) Id., 761–62.

The defendant argues that the "notion" of reasonable compensation is found only in paragraph 4.2 of the agreement "simply to explain the rationale for using $192,000 as the stipulated amount of the plaintiff's pre-tax income at the time of the Agreement, as it consisted of $175,000 in salary and distributions, being the reasonable amount of compensation at the time of the Agreement as determined by the accountants for purposes of valuing Artisans, and the $17,000 in plaintiff's direct benefits. But future calculations were to be based on the plaintiff's actual receipts from the company by way of W-2 salary, direct benefits, and, as found by Judge Adelman, K-1 distributions."[13]

We conclude that the court's determination of the plaintiff's pre-tax income on the basis of his reasonable compensation was supported by evidence in the record. Given the court's preliminary ruling that "the intent of the parties was to include [K-1 distributions] in some level," the court, in its memorandum of decision, identified the central dispute as "how to determine the plaintiff's income . . . ." It repeated the plaintiff's position that "the court should determine his reasonable compensation in accordance with the terms of the parties' agreement" and the defendant's position that "the court should consider all of the actual business funds available for distribution to the partners in addition to the actual salaries paid to them." The court then reviewed the expert testimony proffered by each party and found Kramer's testimony entirely credible. Last, the court stated: "In attempting to determine an accurate and fair income of an individual operating in a closely held corporation or other similar business model, it is always difficult to differentiate between the various methods available. Each has its merits and its limitations. Using a straight W-2 income approach may not be fair or accurate given that the owners of the closely held business have the ability to set salary figures as they wish. Using all available funds for distribution would likewise not be fair given the plaintiff's prior buyout of the defendant's equitable claim to his business interests. The defendant cannot be paid for her equitable claim and then seek to profit from the plaintiff's full ownership interest in the business. In this particular situation, the parties had negotiated a resolution in their agreement when they adopted the 'reasonable compensation' calculation to establish income for alimony and child support purposes. The court sees no reason not to follow that agreed-upon methodology going forward. The court further finds the calculations performed by

Kramer, the plaintiff's expert witness, to be a fair and reasonable adaptation of those done by the mutual expert witness for the parties' 2007 agreement."

In so deciding, the trial court reasonably found that the parties had adopted the reasonable compensation calculation in their agreement, and it properly carried that methodology forward. Having thoroughly reviewed the record before the trial court on remand, we conclude that the court's determination was not clearly erroneous.

V

The defendant's last claim on appeal is that the court improperly "modified the alimony for a period of nearly four years prior to" the plaintiff's motion to modify. (Emphasis omitted.) The plaintiff responds that "Judge Adelman simply calculated the alimony due from the plaintiff to the defendant and the arrearage for the years at issue in the appeal, based on his resolution of the ambiguities in the parties' Agreement. That was not an improper retroactive modification, but exactly the task assigned to the trial court on remand." We agree with the plaintiff.

We first set forth our standard of review and relevant principles of law. "Our deferential standard of review [in domestic relations cases] . . . does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Coury* v. *Coury*, 161 Conn. App. 271, 293, 128 A.3d 517 (2015). Moreover, "[t]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 165 Conn. App. 473, 484–85, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016). General Statutes § 46b-86 (a) provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . ."

The defendant contends that this court's decision in *Lynch* v. *Lynch*, 153 Conn. App. 208, 238, 100 A.3d 968 (2014), cert. denied, 315 Conn. 923, 108 A.3d 1124, cert. denied, U.S. , 136 S. Ct. 68, 193 L. Ed. 2d 66 (2015), is determinative of this issue. We disagree. In *Lynch*, this court considered the plaintiff's claim that the trial court erred in granting the defendant's motion

for contempt on the basis of the plaintiff's nonpayment of alimony and child support where the trial court also found that the defendant owed him reimbursements for alimony and child support. Id. The trial court had ordered reimbursements from the defendant to the plaintiff for an overpayment of child support and alimony. Id., 234. On appeal, the defendant maintained that he was entitled to offset his accrued obligations by his overpayments. Id., 239. This court rejected his argument, stating: "Retroactive modifications of support orders are ordinarily impermissible. . . . With the exception of the period following service of a motion for modification, [n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification . . . . The power of the trial court to modify orders of support and alimony is . . . a creature of statute. General Statutes § 46b-86. Nothing in our statute regarding modification of alimony and support can be construed as authorizing retroactive modification. Such a construction has been expressly disavowed by our Supreme Court. . . . Simply stated, *alimony already accrued may not be modified*." (Emphasis in original; internal quotation marks omitted.) Id.

We disagree that the court, in adjudicating the matter on remand, impermissibly permitted retroactive modification of alimony. A review of the court's memorandum of decision reveals that, for the years 2008 through 2011, it first found the plaintiff's income and then determined his alimony obligation. Following its determination of his alimony obligation, the court then calculated the overpayment or underpayment for each year. The court did not engage in a modification of alimony but rather interpreted and effectuated the alimony provision of the agreement, as it was directed to do by this court's remand order.[14] Separately, the court found that the plaintiff had established a substantial change in circumstances, and it modified his alimony obligation, reducing it to zero, retroactive to September 1, 2011. Because the plaintiff's motion to modify was served on the defendant on August 31, 2011, the court's alimony modification retroactive to September 1, 2011, did not violate § 46b-86. Accordingly, the record does not show an improper retroactive modification of alimony.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims on appeal that, by determining that alimony was to be based on the plaintiff's reasonable compensation, the trial court on remand improperly "modified the terms of the parties' [separation] agreement and consequently the terms of the judgment into which the agreement had been incorporated by reference . . . ." (Citation omitted.) The defendant maintains that such an alleged modification was improper in the absence of a pleading seeking a modification of the terms of the judgment. The defendant's claim is premised on her contention that the court on remand modified the terms of the parties' separation agreement. Because we conclude in parts I and IV of this opinion that the court on remand acted within the scope of this court's remand orders and appropriately calculated the plaintiff's alimony obligation using the methodology of reasonable com-

pensation, we reject the defendant's claim and its underlying premise.

[2] Because we affirm the judgment of the trial court, we need not consider the plaintiff's alternative ground for affirmance, which he raised by way of cross appeal.

[3] Paragraph 4.3 of the agreement provides that, commencing June 1, 2012, and until the death of either party or the defendant's remarriage or cohabitation, whichever shall first occur, the plaintiff shall pay to the defendant, "as alimony, an amount equal to thirty-seven and one-half (37 1/2 %) percent of the [plaintiff's] then pre-tax income from employment as defined above. By way of example, if, in sixty months, the [plaintiff's] base salary plus the cash value of benefits is $200,000, the [plaintiff's] monthly alimony payment to the [defendant] would be $6,250 per month ($200,000 x .375  12 = $6,250)."

[4] In *Marshall I*, supra, 151 Conn. App. 645, the defendant also claimed that the trial court improperly failed to include the plaintiff's direct benefits, which amounted to $17,000 per year, in its calculation of the alimony arrearage. This court agreed and directed the trial court on remand to include the direct benefits in its calculation of the arrearage.

With respect to the defendant's contempt motion, this court affirmed the trial court's decision to decline to find the plaintiff in contempt, stating: "As stated in part I B of this opinion, the agreement is ambiguous as to whether and to what extent K-1 income properly was to be factored into the calculation of alimony. Although we remand the case for further proceedings on this limited issue, we discern no basis on which to disturb the court's conclusions regarding contempt." Id., 651.

[5] Section 6.1 of the agreement stated in relevant part: "For purposes of this Agreement, and based on the business appraisal completed by Meyers, Harrison & Pia in May, 2007, the parties have ascribed a value of $845,000 to the Husband's forty (40%) percent interest in Artisans Home Builders, Inc." Section 6.7 of the agreement further provided: "The Husband shall retain all of his interest in Artisans Home Builders, Inc. free and clear of any claim by the Wife. The Wife hereby waives any claim or entitlement which she may have to the Husband's business including return on investment."

[6] Specifically, Kramer testified that Harrison had used a couple of compensation surveys, one of which was Risk Management Association's (RMA) survey. Kramer described RMA as "a non-profit that . . . deals with the financial services industry. . . . [F]or many, many years, they've been putting together a survey of not only compensation but of operating statistics of business by . . . company type, company size, by some other attributes, showing percentages of revenue to various expense items on an income statement, one of those items being officer compensation to revenue."

In addition to RMA, Kramer testified that he also used a source called BizMiner, which he stated he used in place of Integra, a source that Harrison used. According to Kramer, although Integra was widely used and a viable source at the time of Harrison's analysis, BizMiner had "really replaced Integra for all intents and purposes today."

[7] Kramer initially looked to the plaintiff's K-1 forms for 2008 and 2009 in order to determine the amount Artisan paid for the plaintiff's medical benefits. After noticing that the number did not make sense as it was higher than the other years, Kramer spoke with Bailey, who indicated that it was an oversight. Bailey then helped Kramer determine the correct numbers for 2008 and 2009.

[8] The cases cited by the defendant in support of her claim that the court exceeded the scope of the remand order are factually and legally distinguishable. See *Bruno* v. *Whipple*, 186 Conn. App. 299, 312–13, 199 A.3d 604 (2018) (court on remand acted improperly in rendering judgment for defendant where remand order did not disturb jury verdict in favor of plaintiff and case was remanded for hearing in damages only), cert. denied, 331 Conn. 911, 203 A.3d 1245 (2019); *Oldani* v. *Oldani*, 154 Conn. App. 766, 776, 108 A.3d 272 (court exceeded limited remand order for new hearing on financial orders and attorney's fees when, following remand, plaintiff sought to amend complaint to add six counts unrelated to remand order and court rendered judgment on all counts of amended complaint), cert. denied, 315 Conn. 930, 110 A.3d 433 (2015); *Grady* v. *Schmitz*, 21 Conn. App. 111, 115–16, 572 A.2d 71 (remand order with direction to render judgment for plaintiff was exceeded where breadth of injunction rendered by trial court on remand gave plaintiffs more than that to which they were entitled under terms of restrictive covenant at issue), cert. denied, 215 Conn. 806, 576 A.2d 537 (1990).

[9] To the extent that the defendant argues on appeal that the trial court improperly failed to conclude that the doctrine of judicial estoppel barred

the plaintiff on remand from arguing that reasonable compensation should be used to determine his pre-tax income, we agree with the plaintiff that the defendant did not raise this claim before the trial court. Accordingly, it is unreviewable. The defendant never raised judicial estoppel before the trial court during the hearing on remand, and her posttrial brief likewise lacks any reference to the doctrine.

Moreover, the relevant section of the defendant's principal brief on appeal claims that the plaintiff has abandoned any argument that his pre-tax income should be determined using reasonable compensation on the ground that he failed to raise such an argument in *Marshall I*. It is not until the defendant's reply brief that she seeks to ground her claim in the doctrine of judicial estoppel. In her reply brief, she argues: "While the defendant had not labeled her argument as [one based on judicial estoppel], nevertheless it certainly applies." We decline to consider the defendant's argument that the doctrine of judicial estoppel barred the plaintiff from arguing that reasonable compensation should be used to determine his pre-tax income, as such claim was not raised before the trial court and was raised for the first time in the defendant's reply brief. See, e.g., *Gordon* v. *Gordon*, 170 Conn. App. 713, 718 n.10, 155 A.3d 809, cert. denied, 327 Conn. 904, 170 A.3d 1 (2017).

[10] The defendant also relies on *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 508, 545 A.2d 579 (1988). In *Gennarini Construction Co.*, the trial court denied the plaintiff's application to vacate an arbitration award and confirmed the existing award in favor of the defendant. Id., 507. The Superior Court rejected the defendant's request to supplement an arbitrator's award with interest and attorney's fees. Id. The plaintiff appealed to this court. Id. Although the defendant filed a preliminary statement of issues, in which it listed a claim that the trial court erred in its failure to award it the supplemental moneys it sought, this court declined to address the defendant's claim on the ground that it was not properly raised. Id., 508. This court noted that "[t]he defendant did not file a cross appeal raising this issue." Id., 508 n.6. This court affirmed the Superior Court's affirmance of the arbitration award. Id., 507–508. Following the release of this court's decision, the defendant reclaimed with the trial court a motion for an order, again seeking supplemental interest and attorney's fees. Id., 508. The court denied the defendant's motion. Id., 508–509. An articulation by the court indicated that "the issue of supplemental fees had been fully presented to and decided by [the Superior Court prior to the first appeal], and thus, the defendant was barred under the doctrine of res judicata from raising this claim once again." Id., 509. In the second appeal, this court considered whether the trial court properly determined that the defendant was barred from litigating the claim a second time. Id. This court concluded that the defendant raised an impermissible collateral attack on the first judgment. Id., 511. It emphasized that "[w]hereas the defendant did not take advantage of . . . options [for review], exemplified by its failure to cross appeal from that judgment in [*Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 5 Conn. App. 61, 496 A.2d 539 (1985)] . . . it cannot now be heard to complain. A case cannot be presented by halves. In the event of an appeal to this court an appellee must be prepared to have the case decided with reference to all facts on the record presented for determination by either party. . . . The defendant should have been more diligent in ensuring that it had properly protected its rights." (Citations omitted; internal quotation marks omitted.) *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, supra, 15 Conn. App. 512–13.

The procedural posture of the present case renders it distinct from *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, supra, 15 Conn. App. 504. Once this court determined that the agreement was ambiguous and remanded the matter to the trial court, the plaintiff's arguments as to the method of calculating his pre-tax income were not barred by res judicata, as the question of whether, and to what extent, his distributions were to be included in his pre-tax income remained unresolved, and that question was returned to the trial court for resolution on remand.

[11] The defendant also relies on authorities addressing a party's ability to try his case on one theory and seek to reargue or to appeal on a different theory. See *Clark* v. *Commissioner of Motor Vehicles*, 183 Conn. App. 426, 441, 193 A.3d 79 (2018); *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984). The defendant's reliance is misguided, as the plaintiff has not sought reargument on a different theory, nor did he change his position from the hearing on remand to this appeal.

[12] The defendant argues that this court should afford plenary review to

her claim. She maintains that the agreement "was unambiguous as to the basis on which alimony was to be calculated. It was to be determined on the basis of pre-tax income from employment, not on reasonable compensation." She further argues that the court on remand "never found that it was the parties' intent to utilize 'reasonable compensation' as the basis for alimony calculations." The defendant argues that the only question remaining following this court's decision in *Marshall I* was whether the K-1 income was to be included in the plaintiff's pre-tax income from employment. According to the defendant, the court on remand resolved the ambiguity in favor of the defendant's interpretation. Once the court concluded that the distributions were to be included, "the trial court had no further authority to act beyond undertaking the ministerial act of calculating the arrears that were owed."

We disagree with the defendant. As discussed in part I of this opinion, this court in *Marshall I* determined that paragraphs 4.1 and 4.2 of the agreement required reconciliation. This court recognized that the reconciliation process would involve a "determin[ation] [of] the extent to which K-1 income is to be included in the calculation of 'base salary,' " which this court recognized required "fact-finding as to the intent of the parties." *Marshall I*, supra, 151 Conn. App. 648. The ambiguity recognized by this court and to be resolved by the trial court on remand extended beyond a simple all or nothing determination as to the plaintiff's distributions, and the court's findings as to the intent of the parties are entitled to deference. Accordingly, we review the court's findings under the clearly erroneous standard.

[13] The defendant also argues that "[i]f the alimony order was intended to be based on the plaintiff's 'reasonable compensation,' it could not possibly be self-executing since determining such compensation would require forensic accountants, and there would surely be differing opinions on that issue." We disagree that calculating the plaintiff's income using reasonable compensation is irreconcilable with the determination that paragraph 4.4 of the agreement is self-executing.

In the defendant's principal appellate brief before this court, she recognizes that the trial court in *Marshall I* determined that the alimony provision was self-executing and that this court in *Marshall I* "accepted that notion . . . ." We cannot discern that utilization of the methodology of reasonable compensation, buttressed by the assistance of an accounting professional, precludes paragraph 4.4 from operating in what previously has been determined to be a self-executing manner.

[14] We recognize that the court, in its orders, imprecisely described its action as reducing the plaintiff's alimony obligation for 2008 through 2011. Previously in its memorandum of decision, however, the court made clear that, for the years prior to the plaintiff's filing of his motion to modify, the court's function was to interpret the agreement and to determine the plaintiff's income and resulting alimony obligation, not to modify the alimony obligation. The court expressly recognized that it lacked authority "to make any modified order retroactive past the date of service of the underlying motion absent an agreement of the parties." The court's modification of alimony, which reduced the plaintiff's alimony obligation, was retroactive to September 1, 2011.

––––––––––––––––––––––––––